ERNST *v.* THE BROWN HOISTING AND CONVEYING COMPANY.

(Superior Court of Buffalo—General Term, July, 1893.)

Plaintiff, while in the service of defendant and in the discharge of his duty on the top of a framework of timber, was standing on a plank supported by cross timbers, when one of the cross timbers broke and the plank dropped and plaintiff was precipitated to the ground, a distance of forty feet and injured. In an action to recover damages no claim of contributory negligence on plaintiff's part was made, and the jury found on sufficient evidence that the timber broke by reason of defects which were perfectly apparent on an examination of the timber, and gave plaintiff a verdict; defendant, as a protection from liability, invoked the doctrine that where an appliance or a machine not obviously dangerous has been in daily use for a long time and has uniformly proved adequate, safe and convenient, its use may be continued without the imputation of imprudence or carelessness. *Held*, that although the doctrine was sound, the evidence failed to conclusively establish the fact that the structure was not obviously dangerous or that it had been in daily use for a long time; it was defendant's duty in the first instance to have made the structure which gave way and caused the injuries to plaintiff safe and sufficient for the purpose it was intended to serve, and the jury having found that it failed to discharge that duty the judgment for plaintiff should be affirmed.

APPEAL by defendant from a judgment entered upon the verdict of a jury, and also from an order denying a motion for a new trial made by the defendant upon the minutes of the judge presiding at the trial.

*Adolph Rebadow*, for defendant (appellant).

*George W. Cothran,* for plaintiff (respondent).

WHITE, J.   The defendant is a foreign corporation engaged in the business of manufacturing and selling machines for handling coal and ore and other material.   On January 7, 1891, the plaintiff was in the service of the defendant, and in the discharge of his duty was on the top of a framework of timber which was constructed by the defendant for the purpose for which it was being used by the plaintiff.

While the plaintiff was thus engaged, and while he was standing on a plank supported by cross timbers at either end thereof, one of these cross timbers broke, the plank upon which the plaintiff stood dropped from beneath his feet, he was precipitated to the ground, a distance of some forty feet, and injured, and for these injuries he recovered a verdict for $5,135.   The timber that broke and caused the accident in question was one of two, each of which was two inches thick and eight inches wide.   These two timbers were in a horizontal position and each was securely fastened at each end to an upright timber. The upper edge of one of these two horizontal pieces of timber was slightly above the other.   Similar timbers to the above-described two horizontal ones were fastened in a similar manner to two other similar upright timbers, and the top of these last-mentioned upright timbers was slightly lower than the top of the two uprights first described.   The plank on which the plaintiff was standing extended from and across both sets of these horizontal timbers a distance of some twelve feet.   The fact that one set of the horizontal timbers was somewhat lower than the other, caused one end of the plank on which the plaintiff stood to be elevated slightly, so that the plank on which the plaintiff stood *rested* on the inner one of the two horizontal timbers at its elevated end and on the outer one of the two horizontal timbers at its depressed or lowest end.   The timbers, however, on which the plank rested, if sound, would have supported a dead weight of several thousand pounds more than they were bearing at the time of the accident.

It is claimed by the plaintiff that the cause of the timbers giving way was a defect in the horizontal timber on which the upper end of the plank rested; on the part of the defendant it is claimed that that timber was in fact sound, and was broken by reason of the plank on which the plaintiff stood being negligently raised from its position on the horizontal timber on which it rested and dropped upon that timber with such force as to break it, and that such negligence was that of the plaintiff himself or his fellow-servants.

The question as to what caused the timber to break was sharply litigated and the jury found as a fact that it was by reason of defects which were perfectly apparent on an examination of the timber. The evidence was ample to warrant the finding.

James Sheldon, a witness on the part of the plaintiff, saw and examined the timber that broke after the accident occurred, and he says there were two knots in it, one near the top and the other near the bottom, and that the break extended from one to the other.

There are no exceptions in the case except to the ruling of the court that the evidence warranted its submission to the jury.

The defendant invokes, as a protection from liability in this case, the doctrine that where an appliance or a machine not obviously dangerous has been in daily use for a long time and has uniformly proved adequate, safe and convenient, its use may be continued without the imputation of imprudence or carelessness. The doctrine is sound, and if the facts make it applicable to the defendant, it cannot be held responsible to the plaintiff.

The evidence relied upon to bring the defendant within the protection of the rule is furnished by the witnesses Alexander E. Brown, John Trotter and De Wilton Skinner. The substance of the evidence as to the soundness of this particular structure is as follows: Brown says: "These same caps had been used in two previous places before shipping here, part of it in Ashtabula harbor and part of it in Chicago. I tested this

stuff for nearly a year and a half or two years." This witness did not see the structure as it was erected in Cheektowaga. Trotter says " I had charge of putting up this false work; the caps of this bent had all been used before. I inspected it when I put it up. Yes, sir, I looked it over and had some of the men respike it. I did not see any defect in this work after my inspection. I did not notice the knots in the plank before it broke. I saw the knots in the plank that was broken (after the accident). I saw it was broken where the knots were. The break ran from one knot to the other." Skinner says " This stringer that broke had been used before. I don't know where. I saw the material of which this structure was composed and did not see any defect in it. I did not make any personal inspection of the timber." As to whether or not this timber that contained the knots had ever before been used in the precise place and manner in which it was being used when it broke is not even on this evidence conclusively established, and from the description of the apparatus and manner of its use the jury may have found it had not been.

In my opinion this evidence on the part of the defendant is not conclusive on the question of the soundness or sufficiency of the structure which gave way. It fails to conclusively establish the fact that the structure was *not obviously dangerous*, or that it had been in daily use for a long time. There does not seem to have been any claim made by the plaintiff that the timber which broke had become defective by use, injury or decay, or that the accident was attributable to a lack of inspection and failure to discover such injury or decay, but his claim was and is that the timber was inherently defective and insufficient for the purpose which it was intended to serve, and that that defectiveness and insufficiency was the proximate cause of the injury. No claim of contributory negligence is made on the part of the defendant. It was the duty of the defendant in the first instance to have made the structure which gave way and caused the injury complained of safe and sufficient for the purpose it was intended to serve; the jury have found that it failed to discharge that duty, and,

therefore, I am of the opinion that the judgment appealed
from is supported by the evidence, and that it and the order
denying the motion for a new trial should be affirmed, with
costs.

Order affirmed.